IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARK A. COWART, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:10-cv-1800-G-BN |
| | § | |
| FNU ERWIN, ET AL., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

This case has been referred to the undersigned United States magistrate judge for pretrial management pursuant to 28 U.S.C. § 636(b) and a standing order of reference from the District Court. The undersigned magistrate judge issues the following findings of fact, conclusions of law, and recommendation on Defendants' Motion for Summary Judgment [Dkt. No. 86]. Defendants' motion for summary judgment should be denied.

**Background**

This is a civil rights action brought by Mark A. Cowart, a Texas prisoner, against four detention service officers employed by the Dallas County Sheriff's Department. Plaintiff claims that, while he was detained at the Dallas County Jail, the four officers used excessive force in violation of his Eighth and Fourteenth Amendment rights.

On April 14, 2009, Plaintiff was involved in an altercation with Officers R. Erwin, D. Garrett, D. Weeks, and D. Holt in tank 3E03 of the North Tower of the

Dallas County Jail. According to Plaintiff's allegations, he became engaged with Officer Garrett in a verbal altercation, which escalated into an unprovoked assault when Officer Garrett placed him in a half nelson hold and Officer Erwin punched him in the face two times. Plaintiff states that he was then taken to the floor, kicked repeatedly in the head, ribs, and groin, and sprayed with pepper spray by the four officers, which resulted in loss of consciousness. Plaintiff was subsequently carried in a manner placing undue stress on his shoulders and repeatedly stomped and kicked, and his face was slammed into the wall of the elevator – despite the fact that he provided no resistance and posed no threat to the officers. As a result of the use of force, Plaintiff suffered numerous injuries, including a ruptured eardrum, strained neck, and multiple bruises to the head, face, and back.

On September 10, 2010, Plaintiff filed this 42 U.S.C. § 1983 action *pro se*. The Court then sent written interrogatories to Plaintiff in order to obtain additional information about the factual basis of this suit and to identify the defendants named in the original complaint. On November 12, 2010, the Court summarily dismissed Plaintiff's claims against the Dallas County Jail with prejudice and dismissed his claims against the "John Doe" defendants without prejudice and issued summons to serve upon Defendant R. Erwin. Nine months later, the United States Court of Appeals for the Fifth Circuit vacated the Court's order dismissing the claims against the unnamed defendants, concluding that Plaintiff "was likely entitled to conduct discovery to determine the identities of the unnamed defendants, as it is conceivable that readily available documentation would reveal the identities of some of the John Doe defendants." *Cowart v. Dallas Cnty. Jail*, 439 F. App'x 332, 333 (5th Cir. 2011). On

remand, the Court appointed counsel to assist Plaintiff in discovering the identities of the unnamed defendants and prosecuting this Section 1983 action and subsequently permitted Plaintiff to file an amended complaint. *See* Dkt. Nos. 52, 55, & 57. Plaintiff later voluntarily dismissed any claims against certain defendants. *See* Dkt. Nos. 72 & 79.

The four remaining defendants now jointly move for summary judgment on Plaintiff's amended complaint. *See* Dkt. No. 86. Defendants allege that (1) Plaintiff failed to exhaust state remedies as required under the Prison Litigation Reform Act ("PLRA"); (2) the statute of limitations has run on claims against Defendants Garrett, Weeks, and Holt; (3) the summary judgment evidence establishes that Defendants did not violate the Eighth Amendment by using excessive force; and (4) Defendants are entitled to qualified immunity. Plaintiff filed a response to Defendants' motion, *see* Dkt. No. 92, Defendants submitted a reply brief, *see* Dkt. No. 94, and the motion is ripe for determination.

**Legal Standards**

Under Fed. R. Civ. P. 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or

defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Id.*; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

The Court is required to view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if both parties have introduced evidence showing that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075. Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). If, "after the nonmovant has been given an opportunity to raise a genuine factual issue," "the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *DIRECTV, Inc. v. Minor*,

420 F.3d 546, 549 (5th Cir. 2005); *Steadman v. Texas Rangers*, 179 F.3d 360, 366 (5th Cir. 1999). The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

If, on the other hand, "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). The moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g., Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

"Qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Winston v. City of Shreveport,* 390 F. App'x 379, 383, 2010 WL 3190709, at *3 (5th Cir. Aug. 12, 2010) (quoting *Pearson v. Callahan,* 555 U.S. 223, 231 (2009)); *see also Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). The Supreme Court has established a two-step analysis to determine whether government officials are entitled to qualified immunity. First, the court must decide "whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer,* 536 U.S. 730, 736 (2002); *see also Kinney v. Weaver,* 367 F.3d 337, 356 (5th Cir. 2004). Second, the court must ask "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson,* 555 U.S. at 232 (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001)).

Once a defendant invokes his entitlement to qualified immunity, "the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia,* 305 F.3d 314, 323 (5th Cir. 2002). This burden applies both at trial and on summary judgment. *See id.*; *see also Bazan v. Hidalgo Cnty.,* 246 F.3d 481, 489 (5th Cir. 2001). The plaintiff must rebut the defense by establishing that the allegedly wrongful conduct violated clearly established law. *See Michalik v. Hermann,* 422 F.3d 252, 262 (5th Cir. 2005). In order to overcome the defense of qualified immunity at the summary judgment stage, the plaintiff cannot rest on conclusory allegations or assertions but must demonstrate genuine issues of material fact regarding the reasonableness of the defendant's conduct. *See id.*

**Analysis**

Failure to Exhaust Administrative Remedies

In their motion, Defendants seek summary judgment on their defense of failure to exhaust administrative remedies. A prisoner's failure to exhaust administrative remedies is an affirmative defense that Defendants must plead and prove. *See Jones v. Bock*, 549 U.S. 199, 214 (2007). Therefore, Defendants must establish beyond peradventure all of the essential elements of the defense of exhaustion of administrative remedies to warrant summary judgment in their favor. *See Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010).

The PLRA requires that an inmate exhaust all available administrative remedies before he may maintain a suit in federal court:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Whether a prisoner has exhausted administrative remedies is a mixed question of law and fact. *See Dillon*, 596 F.3d at 266. While it is a question of law whether administrative remedies qualify as being "available" under 42 U.S.C. § 1997e, availability may sometimes turn on questions of fact. *See id.*

The summary judgment evidence establishes that there is a two-step grievance process for inmates in the Dallas County Jail. *See* Dkt. No. 89 at 19-28. To exhaust

administrative remedies, an individual must submit a grievance to any staff member and then file a written appeal if necessary. *See id.* at 21-28; Dkt. No. 93-8 at 4. However, once the inmate has left Dallas County Jail's custody, he is no longer informed of his grievance's fate or permitted to appeal any adverse finding. *See* Dkt. No. 93-8 at 6-7. That is, the Dallas County Jail grievance system is no longer "available."

Defendants argue that Plaintiff failed to exhaust his administrative remedies because there are no records that Plaintiff filed any grievance arising out of the April 14, 2009 incident. *See* Dkt. No. 87 at 9; Dkt. No. 88 at 10-12; Dkt No. 88-1 at 1-16; Dkt. No. 88-2 at 1-2. Plaintiff disputes this allegation; he states that, "[o]n or about April 22, 2009, I filed a grievance describing how the officers beat me up. I handed the grievance ... to a male officer through my cell door, although I do not remember the officer's name." Dkt. No. 93-1 at 5. He indicates that he did not receive a response to the grievance before he was transferred to TDCJ custody on May 21, 2009. *See id.*

Defendants fault Plaintiff's assertion as self-serving and contend that, if Plaintiff had filed such a grievance, he would have received a receipt within a few days; having not received such a receipt, he should have submitted another grievance. *See* Dkt. No. 94 at 2-3. Whether or not Plaintiff should have submitted another grievance, the Jail's policy does not require any such action in order to exhaust remedies. Plaintiff's proffered action – handing a grievance form to an officer – fully exhausts the first step of the grievance plan. *See* Dkt. No. 89 at 21-24; Dkt. No. 93-1 at 5. Because Plaintiff transferred out of the jail before prison authorities were required to respond, no further remedies were available to him. *See id.*

Although Defendants are correct that Plaintiff's claim of exhaustion "is an easy claim to make as it cannot be disproved," Dkt. No. 94 at 1, the reason that it cannot be disproved at the summary judgment stage is because it is a disputed question of fact. Plaintiff's affidavit testimony is competent evidence to rebut a motion for summary judgment. See *Trigg v. Wiginton*, No. 3:10-cv-1962-B-BN, 2013 WL 230365, at *4 (N.D. Tex. Jan. 2, 2013) (citing *Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006)), *rec. adopted*, 2013 WL 238918 (N.D. Tex. Jan. 18, 2013). The undersigned finds that even though Plaintiff's declaration is self-serving – as are most declarations, affidavits, and testimony, *see id.* – it meets the admissibility requirements and is detailed, specific, and based on personal knowledge. Therefore, it is competent summary judgment evidence, particularly in response to Defendants' motion seeking summary judgment on a defense on which they bear the burden of proof.

The Court cannot resolve conflicting testimony in a movant's favor on a summary judgment motion. *See id.* at *5 (citing *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 516 (5th Cir. 1999), *superseded by statute on other grounds as noted in Mathis v. Exxon Corp.*, 302 F.3d 448, 459 n.16 (5th Cir. 2002)). Defendants' other responses, based on the absence of any evidence that conflicts with Plaintiff's testimony and on possible inferences in Defendants' favor that they suggest could be drawn from Plaintiff's failure to re-submit a grievance form, likewise undermine Defendants' effort to obtain judgment as a matter of law in their favor on a defense on which they bear the burden of proof.

Drawing all reasonable inferences in Plaintiff's favor, the undersigned concludes that Defendants have failed to meet their heavy burden to establish beyond

peradventure that Plaintiff failed to exhaust all "available" administrative remedies so as to warrant judgment as a matter of law in their favor. *See Dillon*, 596 F.3d at 266; *Continental Cas. Co.*, 2007 WL 2403656, at *10.

<u>Statute of Limitations on Claims against Defendants Garrett, Weeks, and Holt</u>

Defendants contend that Plaintiff's claims against defendants Garrett, Weeks, and Holt are barred by the two-year statute of limitations applied to Section 1983 cases in Texas. *See* Dkt. No. 87 at 9-15. They suggest that Plaintiff should have sought discovery prior to summary dismissal or during the pendency of his appeal so that he could have ascertained the identities of the "John Doe" defendants and that Plaintiff should have requested leave to amend his pleadings prior to the expiration of the limitations period, which Defendants claim to be April 11, 2011. *See* Dkt. No. 87 at 11. However, it is reasonably clear from the Fifth Circuit's August 31, 2011 order vacating the Court's dismissal of the "John Doe" defendants that the Court of Appeals intended that Plaintiff be permitted to proceed against the unnamed defendants notwithstanding the expiration of the limitations period. *See Cowart*, 439 F. App'x at 332-33. That is, the very reason that this Court's order dismissing the "John Doe" claims without prejudice was vacated was that the dismissal effectively served as a time bar to Plaintiff's claims against the unnamed defendants even though his inability to name them was not the result of contumaciousness or purposeful delay. *See id.*

Although Plaintiff did not specifically request the Court's assistance in identifying the unnamed defendants, the Fifth Circuit has encouraged liberal construction of *pro se* pleadings where justice so requires. *See, e.g., Johnson v. Epps*, 479 F. App'x 583, 587-88 (5th Cir. 2012) (indicating that district court should have

construed objections to court order, objection to magistrate judge's findings, and summary judgment response as motions to amend pleadings). Indeed, the Court of Appeals has observed that "[t]he only reason to sue a 'John Doe' is to conduct discovery backed by the authority of the court." *Green v. Doe*, 260 F. App'x 717, 719 (5th Cir. 2007). Here, Plaintiff explained that he was unable to name the "John Doe" defendants but that "the other defendants ... will be identified after discovery has been pierce by plaintiff once summons has been issued by this court." *See* Dkt. No. 6 at Question 6(a). The Fifth Circuit's ruling that Plaintiff "was likely entitled to conduct discovery" prior to dismissal under 28 U.S.C. § 1915A suggests that it considered Plaintiff's interrogatory responses and other conduct as a request for discovery that should have been granted by the Court. *Cowart*, 439 F. App'x at 333. That this Court did not permit discovery prior to summary dismissal indicates that equitable tolling should apply to Plaintiff's claims against Defendants Garrett, Weeks, and Holt. *See Green*, 260 F. App'x at 719-20.

Accordingly, the Court should find that the allegations against Defendants Garrett, Weeks, and Holt are not time barred.

Absence of a Constitutional Violation and Qualified Immunity

In considering this summary judgment motion, the Court must view all facts and draw all reasonable inferences in the light most favorable to Plaintiff and resolve all disputed factual controversies in favor of him.

Plaintiff alleges that, on April 14, 2009, while he was incarcerated in the Dallas County Jail, he was ordered out of his cell and forced to kneel down, face the wall, and touch his elbows to the wall for at least 30 minutes. *See* Dkt. No. 69 at 4; Dkt. No. 93-1

at 2. When Plaintiff complained about remaining in that position for an extended period of time, Officer Garrett put his hand on Plaintiff's shoulder and told him to "[s]hut the [expletive] up, white boy!" Dkt. No. 69 at 4; Dkt. No. 93-1 at 3. Plaintiff responded by making an obscene remark to the officer. *See id.* Even though Plaintiff was still on his knees and facing the wall, according to Plaintiff, Officer Garrett grabbed him and placed him in a neck hold, while Officer Erwin struck Plaintiff twice in the face with closed fists. *See id.* After Officer Garrett wrestled plaintiff to the ground, he and Officers Erwin, Weeks, and Holt kicked Plaintiff repeatedly in his ribs and groin and stomped on his face, back, and side of his head. *See id.* One of the officers sprayed him with pepper gas and he was continually beaten until he blacked out. *See* Dkt. No. 69 at 5; Dkt. No. 93-1 at 3. Plaintiff alleges that this beating continued even after he regained consciousness. *See id.* Plaintiff states that, despite pleading with the officers to stop, he was hit, stomped, and kicked multiple times while being dragged out of his living quarters by his elbows. *See* Dkt. No. 69 at 5; Dkt. No. 93-1 at 4. One of the officers then slammed Plaintiff's head into the elevator wall. *See id.* Plaintiff contends that he did not offer any resistance or exhibit any conduct justifying the amount of force used. *See* Dkt. No. 93-1 at 4. As a result of this beating, Plaintiff suffered a strained neck, a ruptured ear drum, and multiple contusions. *See id.*

Defendants dispute these claims, contend that no Eighth Amendment violation occurred, and seek qualified immunity, stating that they utilized minimal force in response to Plaintiff's refusal to comply with their commands and his resistance when they attempted to subdue him. *See* Dkt. No. 87 at 17-21.

"'[T]he unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" *Hudson v. McMillian,* 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers,* 475 U.S. 312, 319 (1986)). In order to determine whether a prisoner has been subjected to such a constitutional violation, the Court must consider "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 6-7. This inquiry has two components: an objective one that focuses on whether the alleged wrongdoing was nontrivial and harmful enough to violate the Constitution and a subjective one that focuses on the mental state of the alleged wrongdoer. *See id.* at 7-8. The Court will look to five nonexclusive, so-called *Hudson* factors to make this determination: "'1. the extent of the injury suffered; 2. the need for the application of force; 3. the relationship between the need and the amount of force used; 4. the threat reasonably perceived by the responsible officials; and 5. any efforts made to temper the severity of a forceful response.'" *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998) (quoting *Hudson v. McMillian*, 962 F.2d 522, 523 (5th Cir. 1992)).

The core inquiry focuses on the nature of the force used; Plaintiff need not show that his injuries were significant, although the extent of the injury may provide some indication of the amount of force applied and may suggest whether the use of force could plausibly have been thought necessary in a particular situation. *See Wilkins v. Gaddy,* 559 U.S. 34, 37-39 & n.2 (2010). "Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts." *Id.* at 38.

The failure to protect an inmate from the use of excessive force by others can also be an Eighth Amendment violation that may give rise to liability under Section

1983. *See Hale v. Townley,* 45 F.3d 914, 919 (5th Cir. 1995).

According to the facts alleged by Plaintiff, Officers Erwin, Garrett, Weeks, and Holt participated in unprovoked assaults upon Plaintiff for the purpose of maliciously and sadistically causing him harm, rather than "a good-faith effort to maintain or restore discipline." *Hudson,* 503 U.S. at 7. As a result of the conduct of these officers, Plaintiff sustained significant physical injuries. Although Defendants have provided evidence and argument to refute Plaintiff's factual assertions, on summary judgment, the Court must review all evidence in the light most favorable to the non-movant. *See Rosado v. Deters,* 5 F.3d 119, 123 (5th Cir. 1993); *see also Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 343 (5th Cir. 2007) (citing *Reeves v. Sanderson Plumbing Prods.,* 530 U.S. 133, 150 (2000)) (court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment). Viewing the allegations and summary judgment evidence most favorably to Plaintiff, the summary judgment evidence shows genuine disputes of material fact as to whether each officer's conduct violated Plaintiff's Eighth Amendment rights and was objectively reasonable in light of the surrounding circumstances. *See Hale*, 45 F.3d at 918-19.

Thus, the undersigned concludes that Plaintiff has sufficiently alleged a violation of a clearly-established constitutional right, of which a reasonable person would have known, by each named defendant. Summary judgment in Defendants' favor is not appropriate as to Plaintiff's claims.

## Recommendation

Defendants' Motion for Summary Judgment [Dkt. No. 86] should be denied. Upon entry of an order adopting this recommendation, the case should proceed to the

Court's resolving the factual disputes regarding Defendants' PLRA exhaustion defense, including through an evidentiary hearing if necessary, as required by Fifth Circuit precedent. *See Dillon*, 596 F.3d at 273 ("When the defendant raises exhaustion as an affirmative defense, the judge should usually resolve disputes concerning exhaustion prior to allowing the case to proceed to the merits. If the plaintiff survives summary judgment on exhaustion, the judge may resolve disputed facts concerning exhaustion, holding an evidentiary hearing if necessary. Then, if the judge determines that the plaintiff has exhausted administrative remedies or that his or her failure to exhaust should be excused, the case may proceed to the merits." (footnote omitted)).

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: July 17, 2013

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE