IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARK A. COWART, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:10-cv-1800-G-BN |
| | § | |
| FNU ERWIN, ET AL., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the undersigned magistrate judge for pretrial management pursuant to 28 U.S.C. § 636(b) and an order of reference from the District Court. *See* Dkt. No. 97. The undersigned issues the following findings of fact, conclusions of law, and recommendation on Defendants' exhaustion defense.

**Background**

This is a civil rights action brought by Mark A. Cowart, a Texas prisoner, against four detention service officers employed by the Dallas County Sheriff's Department. Plaintiff claims that, while he was detained at the Dallas County Jail, the four officers used excessive force in violation of his Eighth and Fourteenth Amendment rights. The background and procedural history of this case were largely set forth in the Findings, Conclusions, and Recommendation of the United States Magistrate Judge, dated July 17, 2013. *See* Dkt. No. 95. Those findings were adopted by Senior Judge A. Joe Fish when he denied Defendants' motion for summary judgment on August 2, 2013. *See* Dkt. No. 97.

Judge Fish has recommitted the case to the undersigned for further pretrial management, including resolution of the factual disputes regarding Defendants' PLRA exhaustion defense. *See id.* at 1-2; *see also* Dkt. No. 73 at 2. Consistent with the United States Court of Appeals for the Fifth Circuit's direction in *Dillon v. Rogers*, 596 F.3d 260, 273 (5th Cir. 2010)*,* and pursuant to the order of reference, the undersigned conducted an evidentiary hearing on the affirmative defense of exhaustion of administrative remedies on October 3, 2013. *See* Dkt. No. 105.

Defendants, having asserted the affirmative defense of exhaustion, called as witnesses Officer Phyllis Valladarez and Chief Jesse Herrera of the Dallas County Sheriff's Department. Officer Valladarez, in her role as a grievance officer at the Dallas County Jail, testified about the Jail's two-step inmate grievance procedure. Under the terms of the policy, an inmate must submit a written grievance by providing it to any staff member employed by the jail. *See* Defendants' Exhibit ("DX") 1 at 20. That employee then gives the grievance to a supervisor through an internal mail system or hand delivery, and that official then forwards the grievance and any written report to the Grievance Officer, a representative of the Inmate Grievance Board. *Id.* at 20-21. That individual assigns the grievance a control number for tracking purposes. The Board must provide an interim response within 15 days of receipt. *Id.* The policy does not require any further conduct by the inmate – such as submitting a subsequent grievance – if no interim response is received. After the interim response is sent, the grievance will be reviewed and investigated, and a written reply of the Board's findings will be provided by the Board within 60 days of the date of receipt. *See id.* at 21; *see*

2

*also* DX 2 at 35. The second step in the grievance process, which requires an appeal to the Detention Service Manager Quality Assurance Unit, is not at issue in this case. *See* DX 1 at 25.

Officer Valladarez explained that Plaintiff had previously utilized the prison grievance procedure and had received interim responses indicating that the Grievance Committee had received his written complaints. *See* DX 3 at 38; DX 4 at 45; DX 5 at 51. She reviewed the records of the Dallas County Jail from April 14, 2009 through May 21, 2009 for any written grievances submitted by Plaintiff regarding his claims in this case and did not find any. She also did not find any interim response prepared by the Board. Therefore, she concluded that the Grievance Committee had not received a grievance from Plaintiff. Officer Valladarez did not, however, have any personal knowledge of whether Plaintiff provided a grievance to a jail staff member.

Chief Jesse Herrera testified that it is typical that, when an officer receives a written grievance, he will initial it and date it and is required to forward the document to a supervisor. That supervisor then routes the grievance to a grievance officer. A jail employee can be disciplined for failure to follow this procedure, and there are annual inspections to assure compliance with the inmate grievance plan. A grievance is not required to be on a form or in an envelope, and there is no further obligation for the inmate once he submits a grievance. No receipt is provided to the inmate, no record is made at the point at which the inmate submits the document, and there is no control or tracking number assigned at that time. If a grievance is lost, thrown away, or otherwise fails to reach the grievance officer, there is no record of the inmate's

submitting the grievance. Chief Herrera, too, had no direct knowledge of the Plaintiff's utilization of the grievance system in this case.

Plaintiff testified that he was familiar with the Dallas County Jail's grievance process. He stated unequivocally that he had requested a grievance form, filled it out, and turned it in on April 22, 2009. At that time, Plaintiff was in a single cell in the medical wing of the Dallas County Jail. He requested the grievance form when he was escorted to the cell; he received it when it was slid under the cell door; he filled it out; and he handed the completed form through the food slot to a large Caucasian officer wearing a blue Dallas Sheriff's Office uniform. This was generally the same method that he had used when he submitted past grievances. However, he did not always receive responses, and, in this case, he never received an interim response before he was transferred out of the Jail on or about May 20, 2009.

### Legal Standards

The Prison Litigation Reform Act requires that an inmate exhaust all available administrative remedies before he may maintain a suit in federal court:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002).

4

"[T]he PLRA pre-filing exhaustion requirement is mandatory and non-discretionary." *Gonzalez v. Seal*, 702 F.3d 785, 787 (5th Cir. 2012). The United States Court of Appeals for the Fifth Circuit takes a "'strict' approach to the PLRA's exhaustion requirement," *Dillon*, 596 F.3d at 268, under which "[d]istrict courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint" and "have no discretion to waive the PLRA's pre-filing exhaustion requirement," *Gonzalez*, 702 F.3d at 788. And the Supreme Court has refused to "read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). The pertinent inquiry is not whether the prisoner has pursued his administrative remedies reasonably and in good faith but whether he has exhausted all remedies that are available. *See Underwood v. Wilson*, 151 F.3d 292, 294 (5th Cir. 1998) (abrogated in part by *Jones v. Bock,* 549 U.S. 199, 214 (2007) (abrogating the holding in *Underwood* that a district court may dismiss a civil complaint *sua sponte* for failure to exhaust)).

A prisoner's failure to exhaust administrative remedies is an affirmative defense that Defendants must plead and prove. *See Jones,* 549 U.S. at 216. Whether a prisoner has exhausted administrative remedies is a mixed question of law and fact. *Dillon*, 596 F.3d at 266. While it is a question of law whether administrative remedies qualify as being "available" under 42 U.S.C. § 1997e(a), availability may sometimes turn on questions of fact. *See id.*

"When the defendant raises exhaustion as an affirmative defense, the judge

5

should usually resolve disputes concerning exhaustion prior to allowing the case to proceed to the merits. If the plaintiff survives summary judgment on exhaustion, the judge may resolve disputed facts concerning exhaustion, holding an evidentiary hearing if necessary. Then, if the judge determines that the plaintiff has exhausted administrative remedies or that his or her failure to exhaust should be excused, the case may proceed to the merits." *Id.* at 273 (footnote omitted).

## Analysis

During the October 3 hearing, Plaintiff's counsel suggested that a PLRA exhaustion requirement might not apply at all because, by the terms of the Inmate Handbook, Plaintiff could not be afforded meaningful relief for his excessive force complaint. But the witnesses testified that such a complaint could, for example, result in a referral to the Sheriff's Department's internal affairs unit. And that is all the law requires. "When the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint, exhaustion is not required under the PLRA because there is no available remedy." *Dillon*, 596 F.3d at 267 (internal quotation marks omitted). But, otherwise, "Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." *Booth*, 532 U.S. at 741 n.6. Thus, "a prisoner must now exhaust administrative remedies even where the relief sought – monetary damages – cannot be granted by the administrative process." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).

The Court must therefore determine whether Plaintiff has properly exhausted

the administrative remedies available to him at the Dallas County Jail before his lawsuit may proceed. If, as Defendants urge, he did not submit a written grievance in compliance with the Jail rules, he may not prosecute his civil rights claims for excessive force, and this lawsuit must be dismissed.

"Under § 1997e(a), a prisoner must exhaust such administrative remedies as are 'available,' whatever they may be." *Alexander v. Tippah Cnty., Miss.*, 351 F.3d 626, 630 (5th Cir. 2003). The United States Supreme Court has "held that to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules – rules that are defined not by the PLRA, but by the prison grievance process itself. Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to properly exhaust." *Jones*, 549 U.S. at 218 (internal quotation marks and citations omitted); *accord Kidd v. Livingston*, 463 F. App'x 311, 313 (5th Cir. 2012) ("It is the prison's requirements, not the Prison Litigation Reform Act, that define the requirements of exhaustion."); *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001) ("Nothing in the Prison Litigation Reform Act, however, prescribes appropriate grievance procedures or enables judges, by creative interpretation of the exhaustion doctrine, to prescribe or oversee prison grievance systems." (footnote omitted)). But the exhaustion requirement requires "proper exhaustion," meaning that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford*, 548 U.S. at 88. Accordingly, "mere 'substantial compliance' with administrative remedy procedures

7

does not satisfy exhaustion; instead, [the United States Court of Appeals for the Fifth Circuit has] required prisoners to exhaust available remedies properly." *Dillon*, 596 F.3d at 268.

"In determining exhaustion under the PLRA, [the Court looks] to the processes established by the prison and the parties' use of these processes...." *Moussazadeh v. Texas Dep't of Crim. Justice*, 703 F.3d 781, 788 (5th Cir. 2012). The Fifth Circuit has noted that "[a]ll of [its] previous cases upholding dismissals under § 1997e have involved a failure to file grievances at all or a failure to see the administrative review process through to its conclusion." *Id.* at 789-90.

The parties stipulated on the record at the October 3, 2013 hearing that Plaintiff was transferred to the Texas Department of Criminal Justice's custody before the time for filing any Step 2 appeal. Plaintiff was therefore not required to complete the second step of the Jail's inmate grievance procedure because, once the inmate has left Dallas County Jail's custody, he is no longer informed of his grievance's fate or permitted to appeal any adverse finding. *See* Dkt. No. 93-8 at 6-7. That is, the Dallas County Jail grievance system is no longer "available."

The only issue, then, is whether Plaintiff complied with Step 1 of the Dallas County Jail's grievance procedure, according to the applicable procedural rules defined by the Jail's grievance process itself. If he did so, he has satisfied the PLRA's exhaustion requirement by exhausting such administrative remedies as were personally available to him.

Based on the testimony and evidence presented at the hearing, the undersigned

finds Plaintiff's hearing testimony credible and finds that Plaintiff did timely hand in a grievance to a Dallas County Jail staff member. And that is all that he was required to do pursuant to the applicable procedural rules defined by the Jail's grievance process. Indeed, Defendants' witnesses admitted as much.

The undersigned finds and concludes that, as in other cases that the Fifth Circuit has reviewed, Plaintiff exhausted administrative remedies when he followed the required steps – here, only Step 1 – of the Jail's grievance process without ever having received a response from the prison. *See Hicks v. Lingle*, 370 F. App'x 497, 498-99 (5th Cir. 2010) (discussing *Underwood*, 151 F.3d at 295). It is true that Plaintiff's failure to receive an interim response within 15 days, given his prior experience with the grievance process, might have led him to believe that the grievance had been lost or otherwise not properly processed. In fact, Plaintiff admitted as much during his testimony.

But the Jail's grievance process did not require any action by Plaintiff upon receiving – or not receiving – such a response. Indeed, the Jail's Inmate Handbook advises inmates that "[y]our grievance will be reviewed and/or investigated by the grievance committee, and an answer should be received in 60 days or less, with an interim response in 15 days or less." Plaintiff's Exhibit ("PX") 3. And the Jail's Grievance Plan makes clear that Step 2 of the Dallas County Jail's grievance procedure only becomes relevant "[i]f an inmate is not satisfied with a Board's findings" – that is, based on the Board's "written reply to the inmate on the Board's findings within 60 days of the initial grievance receipt." DX 1 at 7-3, 9-3. This, then, is a case in which "an

9

inmate has exhausted administrative remedies when he follows each step of the prison grievance process without ever having received a response from the prison." *Hicks*, 370 F. App'x at 499.

Defendants argue that, even if the Dallas County Jail's grievance procedures did not require any more of Plaintiff after he allegedly handed a grievance to a staff member, the PLRA required that he do more when he did not receive an interim response within 15 days. However, this argument fails as a matter of law. Again, Defendants have admitted that the Dallas County Jail's grievance procedures did not require any more of Plaintiff after he handed a grievance to a staff member – a fact that they dispute but that the undersigned finds to be true. And "[c]ompliance with prison grievance procedures ... is all that is required by the PLRA to properly exhaust." *Jones*, 549 U.S. at 218. Here, because Plaintiff was no longer in the Dallas County Jail within the time frame in which he would have been able and required to pursue Step 2 of the process, this case materially differs from other cases in which the Court has found that a "failure to pursue [an inmate's] grievance remedy to conclusion constitutes a failure to exhaust the administrative remedies available to the plaintiff." *Amir-Sharif v. Gonzalez*, No. 3:06-cv-2269-G, 2007 WL 1411427, at *2 (N.D. Tex. May 14, 2007).

Defendants complain that the PLRA's purpose will be frustrated if, as here, the Jail authority submits evidence that no grievance was received and Plaintiff simply asserts that he did file a grievance. "The court recognizes Defendants' frustration, but, as the Court noted in *Jones*, 'courts should generally not depart from the usual practice under the Federal Rules on the basis of perceived policy concerns.'" *McDonald v. Dallas*

10

*Cnty.*, No. 3:06-cv-771-L, 2007 WL 2907824, at *3 (N.D. Tex. Oct. 5, 2007) (quoting *Jones*, 549 U.S. at 212). Exhaustion is an affirmative defense that Defendants must prove, and, as such, Plaintiff's testimony – which the undersigned finds credible – is sufficient to establish that he exhausted such administrative remedies as were available to him.

## Recommendation

The undersigned finds that Defendants have failed to prove they are entitled to the affirmative defense of exhaustion of administrative remedies and therefore recommends that Defendants' PLRA exhaustion defense should be rejected and this case should proceed on the merits.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v.*

*United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

    DATED: October 31, 2013

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE