UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MARK A. COWART,  )
                )
         Plaintiff,  )
                )                    CIVIL ACTION NO.
VS.             )
                )                    3:10-CV-1800-G
OFFICER ROSALIND ERWIN,  )
                )
         Defendant.  )

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendant, Rosalind Erwin ("Erwin"), for

judgment as a matter of law or, in the alternative, for a new trial (docket entry 196).

For the reasons discussed below, the motion is denied.

### I.  BACKGROUND

#### A.  Factual Background

Mark A. Cowart ("Cowart"), the plaintiff, brought Eighth Amendment[1] cruel

and unusual punishment claims through 42 U.S.C. § 1983 and Texas state law

assault claims against four detention service officers.  These claims stem from an

---

[1]     "[T]he Due Process Clause of the Fourteenth Amendment incorporates [against the states] the Eighth Amendment's guarantee against cruel and unusual punishment." *United States v. Georgia*, 546 U.S. 151, 158 (2006) (citation omitted).

altercation between Cowart and various detention service officers that occurred on

April 14, 2009 while Cowart was incarcerated in the Dallas County Jail.  Findings,

Conclusions, and Recommendation of the United States Magistrate Judge

("Magistrate's Findings") at 1-2 (docket entry 95).  Cowart alleges that what began as

a verbal altercation between him and a single officer, escalated into an "unprovoked

assault" in which he was "taken to the floor, kicked repeatedly in the head, ribs, and

groin, and sprayed with pepper spray by the four officers, which resulted in loss of

consciousness."  *Id.* at 2.

After a trial, the jury found that among the four defendants, only Erwin was

liable.  *See* Verdict (docket entry 185).  Specifically, the jury concluded that Erwin

violated Cowart's Eighth Amendment rights both by using excessive force directly

against him and through a theory of bystander liability.  *Id.* at 18-19.  Moreover, the

jury determined Erwin committed an assault against Cowart under Texas state law.

*Id.* at 20-21.  Based on the evidence presented at trial, the jury awarded Cowart

$10,000 in compensatory damages and $4,000 in punitive damages.  *Id.* at 28-29,

32-33.

B.  Procedural Background

Erwin made a motion for judgment as a matter of law both at the close of

Cowart's case and after both sides had rested.  Trial Transcript ("TT") at 2:161-165,

178 (docket entries 202-05).  After the court entered judgment on the jury's verdict,

Erwin renewed her motion for judgment as a matter of law under Federal Rule of

Civil Procedure 50(b) and, alternatively, requested a new trial under Rule 59(a)

(docket entry 196).  Cowart filed a timely response (docket entry 206), to which

Erwin served a timely reply (docket entry 209).  The motion is now ripe for

consideration.

## II.  ANALYSIS

### A.  Applicable Legal Standards

#### 1.  *The Rule 50 Standard*

A motion for judgment as a matter of law "challenges the legal sufficiency of

the evidence to support the verdict."  *Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 195

(5th Cir. 2006).  The "standard of review with respect to a jury verdict is especially

deferential."  *Lubke v. City of Arlington*, 455 F.3d 489, 494 (5th Cir. 2006) (citation

omitted).

> [T]he court must review all of the evidence in the record,
> drawing all reasonable inferences in favor of the
> nonmoving party; the court may not make credibility
> determinations or weigh the evidence, as those are jury
> functions.  In reviewing the record as a whole, the court
> must disregard all evidence favorable to the moving party
> that the jury is not required to believe.  That is, the court
> should give credence to the evidence favoring the
> nonmovant as well as that evidence supporting the moving
> party that is uncontradicted and unimpeached, at least to
> the extent that that evidence comes from disinterested
> witnesses.

*Brennan's Inc. v. Dickie Brennan & Company Inc.*, 376 F.3d 356, 362 (5th Cir. 2004)

(internal quotation marks and citation omitted).  A court can grant a Rule 50 motion

for the moving party only if after conducting the above evidentiary review, it

concludes "that a reasonable jury would not have a legally sufficient evidentiary basis

to find for [the non-moving] party on that issue . . .." *Hodges*, 474 F.3d at 193 (citing

FED. R. CIV. P. 50(b)).

## 2.  *The Rule 59(a) Standard*

Under Federal Rule of Civil Procedure 59(a), a court may grant a new trial "for

any reason for which a new trial has heretofore been granted in an action at law in

federal court."  This rule "confirms the trial court's historic power to grant a new trial

based on its appraisal of the fairness of the trial and the reliability of the jury's

verdict." *Smith v. Transworld Drilling Company*, 773 F.2d 610, 612-13 (5th Cir. 1985).

"For example, a new trial may be granted if the court finds that the verdict is against

the weight of the evidence, that the trial was unfair, or that prejudicial error was

committed in the course of the trial." *Mid-Continent Casualty Company v. Eland Energy,*

*Inc.*, 795 F. Supp. 2d 493, 546 (N.D. Tex. 2011) (Fitzwater, Ch.J.), *aff'd*, 709 F.3d

515 (5th Cir. 2013).

## B.  Application

In her motion for judgment as a matter of law, Erwin contends the evidence is

legally insufficient to prove that she violated Cowart's Eighth Amendment rights or

assaulted him.  Defendant Erwin's Renewed Motion for Judgment as a Matter of Law

or Alternatively for a New Trial and Brief in Support ("Erwin's Brief") at 4-12

(docket entry 196).  She also claims that the evidence is legally insufficient to

overcome her right to qualified immunity under federal law or official immunity

under state law.  *Id.* at 12-13.  Finally, Erwin argues that even assuming she

committed a violation for which immunity is not available, the evidence does not

support the compensatory damages award and punitive damages are improper.  *Id.* at

13-15.

In the alternative, Erwin moves for a new trial pursuant to Federal Rule of Civil

Procedure 59.  *Id.* at 1.  Concluding that "no reasonable person could believe that

[the testifying inmates] did not in fact 'conspire' in their testimony or at least 'match

up' their testimony," Erwin claims that allowing the verdict to stand will result in a

"miscarriage of justice."  *Id.* at 16-17.  Similarly, she contends that "[g]iven the

testimony in this case about the conduct of '10 Officers,' including Plaintiff's

testimony that another Officer taunted him with racial slurs ('white boy'), there is no

legally principled basis upon which a reasonable jury could find [her] at fault and no

other individual at fault."  *Id.* at 17.  Finally, she argues that the jury's apparent

confusion regarding damages justifies a new trial.  *Id.* at 17-18.  The discussion below

details why Erwin is not entitled to judgment as a matter of law or a new trial.

1.  *Sufficient Evidence Supports the Jury's Conclusion that Erwin Used Excessive Force Against Cowart in Violation of the Eighth Amendment*

"[T]he Eighth Amendment's prohibition of cruel and unusual punishments draws its meaning from the evolving standards of decency that mark the progress of a maturing society and so admits of few absolute limitations." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (internal quotation marks, alterations, and citation omitted). Generally, to establish an Eighth Amendment violation, a plaintiff must demonstrate both that the defendant acted "with a sufficiently culpable state of mind and [that] the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id.* (internal quotation marks, alterations, and citation omitted).  In the context of an Eighth Amendment excessive force claim, however, the objective component is unnecessary because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Id.* at 9.  Determining if an officer acted "maliciously and sadistically" requires analyzing "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, . . . any efforts made to temper the severity of a forceful response," and the extent of the injury suffered.  *Id.* at 7.

"[W]here a restrained or subdued person is subjected to the use of force[,] . . . courts have frequently found constitutional violations." *Kitchen v. Dallas County, Texas*, 759 F.3d 468, 479 (5th Cir. 2014); see also *Patterson v. Allen*, Civil Action No.

3:12-CV-14, 2013 WL 4875092, at *3 (S.D. Tex. Sept. 11, 2013) (noting that an officer would be liable for using excessive force if he punched a handcuffed and shackled individual in the face).  In a restrained or subdued position, an individual generally poses a limited threat to officers.[2]  Thus, when force is used in such circumstances, it is often used "maliciously and sadistically for the very purpose of causing harm." *Kitchen*, 759 F.3d at 477.

Sufficient evidence supports the jury's conclusion that Erwin violated Cowart's Eighth Amendment rights.  While Cowart was not handcuffed when Erwin initially struck him, there was evidence indicating that he was on his knees with his hands behind his back and facing a wall.  TT, Cowart Testimony at 1:75, 78 ("[W]e were told to assume a position, a submissive position, on our knees with our hands behind our heads interlocked and our legs crossed with our elbows touching against the wall . . ..  Officer Erwin came around to me in front of me and stood above me and hit me twice with closed fits [sic] with a right and then a left."); TT, Benjamin Love Testimony at 1:165-66 ("[T]he officer had him against the wall . . ..  So next thing you know, an SRT, a female officer, she hauled off and hit him."); TT, Willie Allston ("Allston") Testimony at 1:210 ("Q:  And in what position was Mr. Cowart when the African-American female SRT hit him twice?  A:  He was on his knees.  He still had

---

[2]        However, as the Fifth Circuit recently noted, "we emphasize that we do not endorse a per se rule that no force may ever be used after an inmate has been subjected to measures of restraint -- particularly if the effect of the restraint is only partial." *Kitchen*, 759 F.3d at 479 n.30.

his knees behind his head.  He just kind of lifted his forehead off the wall to turn around to look and speak up on his property.").  In this subdued position, Cowart posed little, if any, threat to Erwin.  Thus, punching Cowart while in this position establishes the "malicious and sadistic" intent necessary to violate the Eighth Amendment.

2.  *Sufficient Evidence Supports the Jury's Conclusion that Erwin Violated Cowart's Eighth Amendment Rights Under a Theory of Bystander Liability*

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994).  Specifically, "an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983." *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995) (citations omitted); see also *Anderson*, 17 F.3d at 557 ("An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers . . ..").  Accordingly, before holding a defendant liable under a theory of bystander liability, the fact finder must determine if an officer "had a reasonable opportunity to realize the excessive nature of the force and to intervene to stop it." *Hale*, 45 F.3d at 919.

The jury had sufficient evidence to conclude Erwin violated the Eighth Amendment by failing to prevent other officers from beating and pepper spraying

Cowart after she initially struck him.  Various witnesses testified that after Erwin

struck Cowart in the face, multiple officers proceeded to beat him.  TT, Cowart

Testimony at 1:78-79 ("Q:  Did you try to punch or attack Officer Erwin?  A:  I had

no opportunity to do anything.  The two officers on each side of me and the ones

that were lined up behind me that I didn't know were there all took me to the

ground.  They swarmed me and took me to the ground and began to beat me and

stomp me until, eventually, I was unconscious.  Right before I was unconscious, I got

sprayed on the ground with mace."); TT, Johnny Lee Cowger ("Cowger") Testimony

at 1:134 ("[A]nd the other officers, you know, jumped in and started, you know,

assaulting him, also."); TT, Monticello Abrams ("Abrams") Testimony at 1:150-51

("Q:  And after you saw the female officer hit Mr. Cowart, what did you see next?

A:  The rest of them came down there, and they was holding him -- they had his arms

bent backwards, and they kept saying, stop resisting.  He was like, I'm not resisting,

and that's when they was macing him."); TT, Woodrow Raymond Glover ("Glover")

Testimony at 1:195 ("Well, when he got hit, he was going down, but as he was going

down, that's when the rest of the SRTs -- they was on him.  They was kicking and

punching him.").  Aspects of this testimony also indicate that Erwin possessed a

"reasonable opportunity to realize the excessive nature of the [impending] force and

to intervene to stop it."  *Hale*, 45 F.3d at 919; TT, Cowger Testimony at 1:134

(noting that some of the officers had to come "down the stairs" to begin assaulting

Cowart); TT, Abrams Testimony at 1:151 (stating that after Erwin hit Cowart, "[t]he rest of them *came down there*") (emphasis added); TT, Allston Testimony at 1:210-11 ("Well, after she hit him, a bunch of other ones jumped in.  I just kept hearing the phrase, stop resisting, stop resisting.  He wasn't resisting.  I saw a few other ones come in.").  The jury reached the reasonable conclusion that as the individual who initiated the physical conflict, Erwin could have "prevent[ed the] harm caused by the actions of the other officers . . .." *Anderson*, 17 F.3d at 557.

Erwin argues that the theory of bystander liability is inapplicable because the jury did not find that any of the other three defendants directly violated Cowart's Eighth Amendment rights.  Erwin's Brief at 10-11.  The jury charge states that "bystander liability can only apply against an individual defendant if at least one other defendant violated Cowart's Eighth Amendment rights through the use of physical force."  Verdict at 16.  This instruction did not necessarily require the jury to find one of Erwin's three co-defendants liable in order to apply bystander liability against Erwin.  As Cowart notes in his response brief, "[i]t is entirely possible that the jury concluded that the other defendants used excessive force in Officer Erwin's presence, and also concluded it could not determine [by a preponderance of the evidence] *which* of the other defendants was involved."  Mark Cowart's Response to Officer Erwin's Motion for Judgment as a Matter of Law and Motion for a New Trial ("Cowart's Response") at 10 (emphasis in original) (docket entry 206).  Such a

conclusion is consistent with trial testimony.  Multiple witnesses were able to

specifically identify Erwin but were incapable of identifying the other three co-

defendants as participating officers.  TT, Abrams Testimony at 1:150-53; TT, Glover

Testimony at 1:195, 198.

3. *Sufficient Evidence Supports the Jury's Conclusion that Erwin Committed an Assault Against Cowart Under Texas Law*

Erwin correctly notes that "any activity that would otherwise subject a person

to liability in tort does not constitute tortious conduct if the actor is privileged to

engage in that conduct."  Erwin's Brief at 11 (citation and emphasis omitted).

Section 83.001 of the Texas Civil Practice and Remedies Code states that "[a]

defendant who uses force or deadly force that is justified under Chapter 9, Penal

Code, is immune from civil liability for personal injury or death that results from the

defendant's use of force or deadly force, as applicable."  In relevant part, Chapter 9 of

the Texas Penal Code states:

> An officer or employee of a correctional facility is justified in using force against a person in custody when and to the degree the officer or employee reasonably believes the force is necessary to maintain the security of the correctional facility, the safety or security of other persons in custody or employed by the correctional facility, or his own safety or security.

TEX. PENAL CODE § 9.53.  Relying on this statutory provision, Erwin contends her

actions were privileged.  Erwin's Brief at 11-12.

However, the jury's conclusion regarding Cowart's Eighth Amendment claims implies that Erwin acted "maliciously and sadistically" by punching Cowart when he posed no physical threat. *Supra* at 6-8. In other words, the jury determined that Erwin's use of force was *not* "necessary to maintain the security of the correctional facility, the safety or security of other persons in custody or employed by the correctional facility, or [her] own safety." TEX. PENAL CODE § 9.53. Thus, even assuming the court erred in not submitting a jury instruction concerning this privilege, the error was harmless.[3] *See* FED. R. CIV. P. 61.

---

[3]    Instructing the jury on this issue would likely have been duplicative. The jury charge contained an instruction for official immunity which provides officers protection from "suits arising from the performance of (1) discretionary duties (2) carried out in good faith (3) while acting within the scope of their authority." Verdict at 22. The first and third elements of official immunity are clearly satisfied by the facts of this case. *Infra* at 15-16. Therefore, official immunity applied only if Erwin acted in "good faith." A finding of "good faith" requires a showing that "a reasonably prudent officer, under the same or similar circumstances, could have believed that his conduct was justified based on the information he possessed when the conduct occurred." *Hidalgo County v. Gonzalez*, 128 S.W.3d 788, 794 (Tex. App.-- Corpus Christi 2004, no pet.) (citations omitted). The "reasonably prudent officer" standard used when assessing "good faith" is likely coextensive with § 9.53's "reasonably believes" standard. Thus, in concluding "a reasonably prudent officer" would not have believed Erwin's conduct was justified, the jury indicated that Erwin would also fail Texas Penal Code § 9.53's "reasonably believes" standard.

4.  *Qualified Immunity Does Not Cover Erwin's Actions*[4]

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted).  "The two-part inquiry into qualified immunity is first whether a constitutional right would have been violated on the facts alleged, and second whether the right was clearly established at the time of the violation." *Kitchen*, 759 F.3d at 476 (internal quotation marks and citation omitted).  Courts can address these two prongs in any order.  *Pearson*, 555 U.S. at 236.

The court has already concluded that sufficient evidence supports the jury's determination that Erwin violated the Eighth Amendment.  *Supra* at 6-8.  Therefore, to assess Erwin's defense of qualified immunity, the court must determine whether Erwin violated a clearly established right.  "To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  There need not be a commanding precedent that holds that the very action in question is

---

[4]    The Supreme Court noted that qualified immunity "is effectively lost if a case is erroneously permitted to go to trial." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted).  A magistrate judge provided the court with a recommendation to reject Erwin's qualified immunity defense raised in a motion for summary judgment.  Magistrate Judge's Findings at 11-14.  The court accepted this recommendation.  Order (docket entry 97).

unlawful; the unlawfulness need only be readily apparent from relevant precedent in sufficiently similar situations." *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008) (internal quotation marks and citations omitted).  Pertinent to this case, the Fifth Circuit has stated that officers have "reasonable warning that kicking, stomping, and choking a subdued inmate would violate the inmate's constitutional rights under certain circumstances." *Kitchen*, 759 F.3d at 479; see also *Chacon v. York*, 434 F. App'x 330, 332 (5th Cir. 2011) (concluding that if an officer punched an inmate in the eye without appropriate provocation, the defense of qualified immunity would not apply).  Based on these cases, "a reasonable official would understand that what [Erwin was] doing" violated the Eighth Amendment. *Brown*, 519 F.3d at 236.

It is equally clear that Erwin had a duty to intervene and prevent the other officers from violating Cowart's constitutional rights. *Garza v. Miller*, Civil Action No. H-09-1433, 2010 WL 3447658, at *9 (S.D. Tex. Aug. 30, 2010) ("A prison guard has a duty to intervene and attempt to end an assault on an inmate."); see also *Hale*, 45 F.3d at 919 ("The district court correctly held that an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983.").[5]  Therefore,

---

[5]      The plaintiff in *Hale* alleged a state police officer used excessive force during a search; thus, the Fifth Circuit was considering the plaintiff's Fourth Amendment rights as incorporated against the states through the Fourteenth Amendment.  *See* 45 F.3d at 916, 919.  Because the Fifth Circuit has "demonstrate[d] a tendency to 'blur' the lines between Fourteenth Amendment and either Fourth or Eighth Amendment excessive force standards," *Petta v. Rivera*, 143 F.3d 895, 912

qualified immunity does not protect Erwin from liability under the doctrine of bystander liability.

### 5.   *Sufficient Evidence Supports the Jury's Conclusion that Official Immunity is Inapplicable*

Official immunity protects officers from liability when they are performing (1) "a discretionary function (2) in good faith (3) within the scope of the [officer's] authority." *Kassen v. Hatley*, 887 S.W.2d 4, 9 (Tex. 1994) (citation omitted).  With regard to the first requirement, "an action involv[ing] personal deliberation, decision and judgment . . . is discretionary." *City of Lancaster v. Chambers*, 883 S.W.2d 650, 654 (Tex. 1994).  An officer acts in good faith when "a reasonably prudent [officer], under the same or similar circumstances, could have believed that his conduct was justified based on the information he possessed when the conduct occurred." *Ballantyne v. Champion Builders, Inc.*, 144 S.W.3d 417, 426 (Tex. 2004) (citation omitted).  Finally, "public officials act within the scope of their authority if they are discharging the duties generally assigned to them." *Id.* at 424 (citation omitted). Official immunity is a question of fact appropriate for the jury.  *Kassen*, 887 S.W.2d at 6 ("We conclude that official immunity is a question of fact . . ..).

Sufficient evidence supports the jury's conclusion that Erwin is not entitled to the affirmative defense of official immunity.  Verdict at 22-23.  Trial testimony

_____

(5th Cir. 1998), the case also provides insight regarding claims concerning the Eighth Amendment.

indicated that during "shakedown" operations, which were generally assigned to

Erwin's Special Response Team, officers exercised independent judgment concerning

whether force was necessary to effectively perform their duties.  TT, David Garrett

Testimony at 2:7 ("Q:  So it's only when an officer reasonably believes that force is

necessary, correct?  A:  Yes, sir."); TT, Davis Weeks Testimony at 2:51 (indicating

that the SRT officers regularly conduct "shakedowns"); TT, Sergeant Roberts

Testimony at 2:85 ("Q:  And your group of SRTs, as well as you, are trained to

actually engage -- well, not, obviously, start an altercation, but you're trained to

respond to physical violence from inmates; isn't that right?  A:  Yes.").  However, the

evidence supporting the jury's conclusion that Erwin acted with a "malicious and

sadistic" intent, see *supra* at 6-8, indicates that Erwin did *not* act in "good faith."

Consequently, the jury had sufficient evidence to reject the affirmative defense of

official immunity.[6]

### 6.  *Sufficient Evidence Supports the Jury's Award of Punitive Damages*

"Under § 1983, punitive damages may be awarded only if the official conduct

is 'motivated by evil intent' or demonstrates 'reckless or callous indifference' to a

person's constitutional rights."  *Sockwell v. Phelps*, 20 F.3d 187, 192 (5th Cir. 1994)

(quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)).  "[W]here the standard for

---

[6]      Given that "Texas law of official immunity is substantially the same as
federal qualified immunity law," *Haggerty v. Texas Southern University*, 391 F.3d 653,
658 (5th Cir. 2004) (internal quotation marks and citation omitted), the jury's
conclusion is consistent with the court's determination regarding qualified immunity.

compensatory liability is as high as or higher than the usual threshold for punitive

damages, most courts will permit awards of punitive damages without requiring any

extra showing." *Smith*, 461 U.S. at 53.  Specifically:

> [W]hen a jury finds constitutionally excessive force in
> violation of the Eighth Amendment, it makes "the
> threshold finding of 'evil intent' or 'callous indifference'
> needed to warrant punitive damages, because the threshold
> standard for excessive-force liability -- that the force was
> applied 'maliciously and sadistically for the very purpose of
> causing harm' -- is substantially indistinguishable from the
> threshold standard for punitive damages.

*Cooper v. Morales*, 535 F. App'x 425, 432 (5th Cir. 2013) (quoting *Jones v. Conner*, 233

F.3d 574, at *1 (5th Cir. 2000)).  Since the jury had sufficient evidence to conclude

that Erwin acted maliciously and sadistically, *see supra* at 6-8, it had discretion to

award Cowart punitive damages.

  7.  *Sufficient Evidence Supports the Jury's Award of Compensatory Damages*

  "[A] strong presumption exists in favor of affirming a jury award of damages,

and a verdict will be overturned only upon a clear showing of excessiveness or upon a

showing that the jury was influenced by passion or prejudice."  *Sanders v. Baucum*, 929

F. Supp. 1028, 1039 (N.D. Tex. 1996) (Solis, J.) (citations omitted).  Unless the

jury's award is "entirely disproportionate to the injury sustained," it should not be

disturbed.  *Caldarera v. Eastern Airlines, Inc.*, 705 F.2d 778, 784 (5th Cir. 1983).  The

jury has broad leeway with respect to pain and suffering and non-economic

considerations because those elements of damages are "to a large degree, not

susceptible to monetary quantification." *Seidman v. American Airlines, Inc.*, 923 F.2d 1134, 1141 (5th Cir. 1991) (internal quotation marks and citation omitted). In the Fifth Circuit, "[t]he propriety of awards are not determined by comparing verdicts in similar cases, but rather by a review of the facts of each case." *Hale v. Fish*, 899 F.2d 390, 403 (5th Cir. 1990) (citation omitted).

At trial, the jury heard testimony from Cowart and two health care professionals regarding the pain he experienced during the incident and the extent of his injuries. Cowart indicated that the incident itself was painful, pain persisted in the immediate aftermath of the incident, and the experience permanently weakened his right hand. TT, Cowart Testimony at 1:86-88. Nurse Granado, who examined Cowart after the incident, testified that Cowart had minimal range of motion with his right hand and complained of throbbing pain in his left eye. TT, Lisa Granado Testimony at 1:184, 186. According to Doctor Muller, Cowart had both a neck sprain and contusions on his face, scalp and neck following the incident. TT, Matthew Muller Testimony at 2:32. The jury had photographs of Cowart taken shortly after the incident and medical records to assist in evaluating the credibility of the above testimony. Exhibit and Witness List at 1-3 (docket entry 186).

The jury's award of $10,000 compensatory damages is not "entirely disproportionate to the injur[ies Cowart] sustained." *Caldarera*, 705 F.2d at 784. As detailed in the paragraph above, the jury had sufficient evidence to conclude that

Cowart experienced pain and suffering both during and in the days following the

incident and also suffered permanent injury to his right hand.  In light of this

evidence, the court cannot conclude that the compensatory damages are "so large as

to shock the judicial conscience, so gross or inordinately large as to be contrary to

right reason, so exaggerated as to indicate bias, passion, prejudice, corruption, or

other improper motive, or as clearly exceeding that amount that any reasonable man

could feel the claimant is entitled to."  *Caldarera*, 705 F.2d at 784 (internal quotation

marks, alterations, and citations omitted).

### 8. *Erwin Fails to Identify Any Justification for a New Trial*

Erwin contends that "[s]omething seriously amiss occurred in the trial of this

case [because f]ive current inmates, who were present at the incident that occurred on

April 14, 2009, five and a half years before they testified at this trial, remembered in

great detail and astonishing similarity what allegedly happened on that date."

Erwin's Brief at 16 (emphasis omitted).  In his response brief, Cowart identifies two

major weaknesses with this argument.  First, "Erwin ignores that the witness

testimony could be consistent because each of the witnesses was actually, truthfully

relaying his memory about the assault that occurred."  Cowart's Response at 18.

Second, Erwin "had the opportunity to ask [the witnesses] questions to ferret out

their potential biases and to impugn their credibility, and in fact, she did that."  *Id.*

Despite Erwin's efforts, the jury's verdict indicates that its members believed at least

some of the inmates' testimony.  Credibility determinations are "the purest of jury

issues" and do not justify granting a new trial.  *Dotson v. Clark Equipment Company*,

783 F.2d 586, 588 (5th Cir. 1986) (citation omitted).

Similarly, Erwin states that "there is no legally principled basis upon which a

reasonable jury could find [Erwin] at fault and no other individual at fault."  Erwin's

Brief at 17.  However, as discussed above, the jury reached the reasonable conclusion

that other officers were involved in the incident but was unable to find by a

preponderance of the evidence any of Erwin's three codefendants liable.  See *supra* at

10-11.  As Cowart correctly notes, "The fact that other officers were also involved and

also 'taunted' Mr. Cowart that night does not absolve Officer Erwin of her own

violation of Mr. Cowart's rights.  The jury found she violated his rights [and] that

finding is backed up by the record . . .."  Cowart's Response at 19.

Finally, according to Erwin, a new trial should occur because the "jury was

apparently confused about the issues [sic] of damages."  Erwin's Brief at 17.  The jury

submitted a note to the court indicating their confusion regarding Question No. 5 of

the verdict form.  Jury Notes and Chambers Response at 11 (docket entry 187).  The

jury stated that it did not want to "consider damages for the defendants," the issue

covered by Question No. 5.  *Id.*  In response, the court noted that the intent of

Question No. 5 is "to determine whether or not you have to answer the next question

which is Question No. 6."  *Id.* at 12.

As Cowart correctly states, the note "indicates that the jury was confused because they thought the instructions were telling them to award damages to *the Defendants*, which they did not want to do in light of their finding for Mr. Cowart on liability."  Cowart's Response at 20 (emphasis in original).  The court's response to the note implied that the pages immediately following Question No. 5 on the verdict form would remove any possible confusion.  The instructions following Question No. 5 state, "If you answered 'Yes' to Question No. 5 for one or more individual defendants, then you will have to consider damages *against those individual defendants*."  Verdict at 25 (emphasis added).  Furthermore, Question No. 6 states, "What sum of money, if paid now in cash, would fairly and reasonably *compensate Cowart* for damages resulting from the violations of Cowart's Eighth Amendment rights or the Texas law assault claim committed by the <u>all</u> [sic] liable defendants?"  Verdict at 28 (emphasis added).  "Constru[ing] the jury charge and interrogatories as a whole," *Kodrin v. State Farm Fire and Casualty Company*, 314 F. App'x 671, 678 n.23 (5th Cir.) (citation omitted), *cert. denied*, 558 U.S. 879 (2009), the court concludes that the jury properly understood the instructions.

## III.  <u>CONCLUSION</u>

For the reasons discussed above, the defendant's motion for judgment as a matter of law or, in the alternative, for a new trial is **DENIED**.

**SO ORDERED**.

April 9, 2015.

_____

A. JOE FISH
**Senior United States District Judge**